41 F.3d 1504
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ruby Lee Smiling LOCKLEAR, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bobby Carl LOCKLEAR, Defendant-Appellant.
 Nos. 93-5490, 93-5535.
 United States Court of Appeals, Fourth Circuit.
 Argued: Sept. 27, 1994.
Decided: Nov. 15, 1994.
 
 Appeals from the United States District Court for the Eastern District of North Carolina, at Fayetteville. W. Earl Britt, District Judge. (CR-92-67-3)
 ARGUED: William Lee Davis, III, Lumberton, NC; Todd CLark Conormon, BANKS & CONORMON, Fayetteville, NC, for appellant. Christine Witcover Dean, Asst. U.S. Atty., Raleigh, NC, for appellee. ON BRIEF: J. Douglas McCullough, U.S. Atty., Raleigh, NC, for appellee.
 E.D.N.C.
 AFFIRMED.
 Before RUSSELL and MICHAEL, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Ruby and Bobby Locklear were convicted for maintaining a place for the purpose of distributing and using marijuana and cocaine, in violation of 21 U.S.C. Sec. 856. Ruby Locklear appeals her conviction and Bobby Locklear appeals his sentence. Finding no error, we affirm.
 
 I.
 
 2
 On October 9, 1992, federal and local officers executed a search warrant at the home of Ruby and Bobby Locklear. The search revealed cocaine, marijuana, drug paraphernalia, and weapons throughout the house, including cocaine residue and two revolvers in the Locklears' bedroom and cocaine and a growing marijuana plant in the bedroom of their nineteen-year-old son, Carl Locklear. Marijuana, a box of plastic bags, two bottles of manitol (a cocaine diluent), and a set of weighing scales were found in barns behind the house. In an interview after the search, Bobby Locklear accepted responsibility for most of the items in the house. Ruby and Bobby Locklear were each charged with, among other things, knowingly maintaining a place for drug use or distribution in violation of 21 U.S.C. Sec. 856.
 
 
 3
 At the close of evidence at trial, Ruby Locklear requested a modified aiding and abetting instruction to inform the jury that her mere presence at the residence was insufficient to establish her guilt. The judge did not initially give an aiding and abetting instruction, but he did instruct the jury about mere presence. This instruction resulted in a question from the jury, in response to which the judge, over Ruby Locklear's objection, gave a complete aiding and abetting instruction.
 
 
 4
 Ruby and Bobby Locklear were each convicted for knowingly maintaining their home and outbuildings as a place for drug trafficking and use. At sentencing the district court increased Bobby Locklear's base offense level for three reasons. First, the court determined that Bobby Locklear had obstructed justice by instigating a plot to "do away with" Randy Myers, the federal agent in charge of investigating the Locklears. The court relied on Myers' testimony relaying information from two unidentified informants and on the testimony of an incarcerated felon, Jerry Scott. Each of the informants and Scott said independently that Bobby Locklear had been involved in a conspiracy to kill Myers. Therefore, the court imposed a two-level upward adjustment for obstruction of justice under U.S.S.G. Sec. 3C1.1.
 
 
 5
 Second, the court increased Bobby Locklear's offense level by two more points for possession of a firearm under U.S.S.G. Sec. 2D1.1. Finally, the court departed upward another two points on the grounds that Locklear had misused his influence as a parent to expose his son to the drug trade. This gave Locklear a total offense level of twenty-two, from which the court imposed a sentence of fifty-one months imprisonment and three years supervised release.
 
 II.
 
 6
 Ruby Locklear challenges her conviction on two grounds. First, she argues that the district court erred in giving a supplemental jury instruction on aiding and abetting. Second, she claims that the evidence was insufficient to support her conviction for maintaining a drug dwelling.
 
 A.
 
 7
 Ruby Locklear claims that the district court erred in giving the aiding and abetting instruction without prior notice and after closing arguments. She says her counsel should have been allowed additional jury argument after the supplemental instruction.
 
 
 8
 The necessity, extent, and character of supplemental jury instructions are matters within the trial court's discretion. United States v. Horton, 921 F.2d 540, 546 (4th Cir.1990), cert. denied, 501 U.S. 1234 (1991). Under Federal Rule of Criminal Procedure 30, a judge normally should allow additional argument after giving supplemental instructions. Id. at 547. However, failure to do so is reversible error only when the defendant can show actual prejudice. Id.
 
 
 9
 Ruby Locklear failed to show that she was prejudiced by the court's failure to allow additional argument. While she claims that she did not discuss aiding and abetting in her closing argument, she fails to show that her argument would have been different had she received prior notice of the instruction. Her defense was based on the theory that she was merely present at the house and did not participate in maintaining the house for drug purposes. This theory is a defense to aiding and abetting to the same extent it is a defense to the underlying crime. As in Horton, "advance notice of the aiding and abetting instruction would not have altered the tenor or substance of [Ruby Locklear's] initial closing." Id. Therefore, any error was harmless.
 
 B.
 
 10
 Ruby Locklear next contends that insufficient evidence existed to convict her under 21 U.S.C. Sec. 856(a)(1), which makes it unlawful to "knowingly open or maintain any place for the purpose of manufacturing, distributing, or using any controlled substance." To convict Ruby Locklear under this provision, the jury had to find that she (1) knew the premises were being used for drug activity, (2) exercised dominion and control over the premises, and (3) intended the premises to be used for drug activity. United States v. Clavis, 956 F.2d 1079, 1090-93 (11th Cir.), cert. denied, 112 S.Ct. 2979, modified, on reh'g, in part, 977 F.2d 538 (11th Cir.1992).
 
 
 11
 The evidence is sufficient to establish each of these elements. From the extent of drugs and drug paraphernalia found at the house a jury could easily infer that Ruby Locklear knew about the drugs. The fact that she had dominion over the house is evident from the fact that she lived there and owned it jointly with her husband. Finally, from the large quantity of drugs, drug paraphernalia, and weapons found throughout the house, including in her bedroom, a jury could infer that she intended to use the property to distribute drugs. United States v. Onick, 889 F.2d 1425, 1431 (5th Cir.1989). Thus, the evidence was sufficient to support Ruby Locklear's conviction.
 
 III.
 
 12
 Bobby Locklear challenges his 51-month sentence on two grounds. First, he claims that the district court erred in departing upward because he involved his son in criminal activity. Second, he maintains that the court erred in finding that he obstructed justice because it relied on hearsay evidence from unidentified informants and because the finding was not supported by credible evidence.
 
 A.
 
 13
 The Sentencing Guidelines give courts broad discretion to depart from the guideline sentencing ranges when aggravating or mitigating circumstances exist that are not otherwise taken into consideration. U.S.S.G. Sec. 5K2.0. The district court, exercising this discretion, raised Bobby Locklear's offense level by two points on the grounds that he had involved his son, Carl Locklear, in the use and sale of marijuana and cocaine by exposing him to a drug business environment. The court determined the extent of the departure by referring to U.S.S.G. Sec. 3B1.3, which provides for a two-level adjustment for abuse of a position of trust.
 
 
 14
 We find the departure proper. Ample precedent exists for departing upward based on a parent's influencing his or her children to join in criminal activity. United States v. Ledesma, 979 F.2d 816, 822 (11th Cir.1992); see also United States v. Shuman, 902 F.2d 873, 876 (11th Cir.1990) (enhancing sentence where defendant "voluntarily and wilfully brought her son into a drug business environment"). Moreover, in other contexts the guidelines have aimed to provide special protection to minors and others in custodial care. See, e.g., Sec. 2D1.2 (sentence enhancement for distributing drugs to a minor); Sec. 2A3.1 (increasing sentence for sexual abuse if the victim is in the custody of the defendant).
 
 
 15
 Bobby Locklear argues that the departure was improper because he did not coerce his son to sell drugs, claiming coercion is required by cases interpreting Sec. 3B1.3. However, the district court did not actually impose an adjustment under Sec. 3B1.3. Rather, it used Sec. 3B1.3 as a reference to determine the extent of its Sec. 5K2.0 departure. Thus, these cases do not control. We believe that a departure is warranted even absent coercion where, as here, a parent exposes a child to a drug business environment and thereby facilitates his ability to obtain illegal drugs. See Shuman, 902 F.2d at 876.
 
 B.
 
 16
 Bobby Locklear next contends that the district court erred in relying on hearsay statements from unidentified informants in adjusting his sentence upwards for obstruction of justice. And even if the hearsay evidence was not barred, he argues, the evidence was insufficient to support the court's finding.
 
 
 17
 The Sentencing Guidelines allow a sentencing court to consider evidence which would be inadmissible at trial, provided that it has "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. Sec. 6A1.3. Commentary to Sec. 6A1.3 makes clear that "[o]ut-of-court declarations by an unidentified informant may be considered where there is good cause for the non-disclosure of his identity and there is sufficient corroboration by other means." United States v. Roberts, 881 F.2d 95, 106 (4th Cir.1989) (internal quotations omitted).
 
 
 18
 We review the district court's determination of reliability under an abuse of discretion standard. United States v. Jewel, 947 F.2d 224 (7th Cir.1991). Here, several factors enhanced the reliability of the informants' information. The first informant had given reliable information in the past, and the second was a law-abiding citizen. Each, without knowledge of the other, gave a separate and similar account of the conspiracy against Agent Myers. These accounts were corroborated by the independent testimony of Jerry Scott. Locklear had the opportunity to cross-examine Scott. Therefore, we find that the district court did not abuse its discretion in considering the out-of-court statements of the informants.
 
 
 19
 The evidence supports a finding that Bobby Locklear was involved in a plot to kill Agent Myers. Thus, the district court did not clearly err in granting an upward adjustment for obstruction of justice.
 
 IV.
 
 20
 For the foregoing reasons, we affirm Ruby Locklear's conviction and Bobby Locklear's sentence.
 
 
 21
 AFFIRMED.